## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOSEPH C. REISINGER | * | |
| 2 San Mateo Court | * | |
| San Rafael, California 94903 | * | |
| | * | |
| PLAINTIFF, | * | |
| | * | |
| v. | * | Case No.:  19-1358 |
| | * | |
| DISTRICT BUILDERS OF SOUTHERN | * | |
| MARYLAND, LLC | * | |
| 30537 Potomac Way | * | |
| Charlotte Hall, Maryland 20622 | * | |
| | * | |
| SERVE RESIDENT AGENT: | * | |
| Kathy Purll | * | |
| 40454 Waterview Drive | * | |
| Mechanicsville, Maryland 20659 | * | |
| | * | |
| SAMUEL B. PURLL, JR. | * | |
| 40454 Waterview Drive | * | |
| Mechanicsville, Maryland 20659 | * | |
| | * | |
| DEFENDANTS. | * | |

**************************************************************************

## COMPLAINT

Plaintiff Joseph C. Reisinger ("Plaintiff" or "Reisinger"), by and through undersigned counsel, hereby files this Complaint against Defendants District Builders of Southern Maryland, LLC ("District Builders") and Samuel B. Purll, Jr. ("Purll") (together, "Defendants") for damages Plaintiff sustained as a result of conversion and fraud.

## PARTIES AND JURISDICTION

1.     Plaintiff is an adult resident of the State of California.

2.     District Builders is a Limited Liability Company formed under the laws of the State of Maryland and doing business in the District of Columbia.

3.      Purll is an adult resident of the State of Maryland and owns and operates District Builders.

4.      This Court has jurisdiction over Defendants because "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . [c]itizens of different states."  28 U.S.C. § 1332(a).

5.      Venue is proper in this Court because this is the "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2).

## FACTS

6.      In about January 2017, Reisinger sold investment real property as part of an Internal Revenue Code ("IRC") § 1031 exchange.  Under IRC § 1031, individuals can defer the taxable gain on the sale of real property held for investment purposes if they reinvest the proceeds into a similar property within 180 days after the sale.  To complete the IRC § 1031 exchange, Reisinger intended to purchase and renovate a property in the District of Columbia within the time period required by the IRC.

7.      Reisinger's daughter, Lauren Serrano ("Serrano"), resided in the District of Columbia and managed many of the aspects of the transaction on her father's behalf.  Serrano had power of attorney to act for her father regarding matters related to the IRC § 1031 exchange.

8.      In March 2017, Plaintiff entered into an agreement to purchase real property located at 1622 R Street SE, Washington, DC 20020 (the "R Street Property") as part of an IRC § 1031 exchange.

9.      Plaintiff and District Builders entered into a contract (the "Contract"), dated March 16, 2017 but actually signed on March 17, 2017, prepared by Purll, by which District Builders

agreed to perform renovations on the R Street Property.  Per the Contract, Plaintiff agreed to pay a deposit of $47,463.93 and a total price of $189,855.70.  The Contract provided: "Customer has seventy-two hours (72) to rescind this contract from signing."

10.     Soon after signing the Contract, Plaintiff learned that he would be unable to close on the R Street Property. Plaintiff notified Purll within the seventy-two (72) hour window set forth by the Contract that the Contract was rescinded.  At the time of the rescission, Plaintiff had not paid the deposit.  Plaintiff never acquired the R Street Property.

11.     Although Plaintiff had rescinded the Contract, he still intended to hire Purll and District Builders to perform renovations on his alternate property for the IRC § 1031 exchange, located at 1300 U Street SE, Washington, DC 20020 (the "U Street Property").

12.     Plaintiff and Purll agreed that Purll and District Builders would perform renovations on the U Street Property.  Purll told Plaintiff that he had – unbeknownst to Plaintiff and without Plaintiff's approval – already purchased materials in anticipation of Plaintiff acquiring the R Street Property.

13.     When Plaintiff did not close on the R Street Property, Serrano asked Purll to return the materials that he had purchased in preparation for construction on the R Street Property.  Purll told Serrano and Plaintiff that all of the materials he purchased could be used on the U Street Property.

14.     On March 30, 2017, Purll called Serrano and demanded payment of approximately $28,000 from Serrano for purchases Purll claimed to have made in preparation for construction on the R Street Property, notwithstanding Plaintiff's rescission of the Contract.  When Purll called Serrano, she was in labor at the hospital preparing to give birth to her daughter.  Serrano told Purll

that she could not discuss the R Street Property or the Contract at that time and advised Purll to contact Plaintiff.

15.     After speaking with Serrano, Purll immediately called Plaintiff.  Purll again demanded payment of approximately $28,000, and falsely told Plaintiff that Serrano had already authorized the payment.  Serrano never approved or promised payment for any such expenditure.

16.     Because of the stringent requirements of IRC § 1031, Plaintiff's money was being held in a "qualified intermediary" account by Old Republic Exchange ("Old Republic").  The IRC and corresponding Treasury Regulations state that the taxpayer cannot take possession of the proceeds of the sale of property for the purpose of an IRC § 1031 exchange.  As such, the IRC and Treasury Regulations require that the proceeds of the sale be held by a "qualified intermediary" which is then authorized to make payments on the taxpayer's behalf in connection with the property to be acquired during the exchange.

17.     Old Republic made the funds available to Purll without knowledge that the Contract had been rescinded.

18.     Notwithstanding that Plaintiff had rescinded the Contract, once Old Republic made the funds available, Purll withdrew $47,463.97 – the entire amount of the deposit under the rescinded Contract.

19.     At no time did Plaintiff authorize Purll to withdraw from the qualified intermediary account any amount above the approximately $28,000.00 Defendants demanded.

20.     As soon as he discovered the unauthorized advance to Purll from Old Repblic, Plaintiff demanded that Purll and District Builders return the money they took from the qualified intermediary account.  Purll and District Builders refused to return the money.

21.     Purll later advised Plaintiff that the entire amount of Plaintiff's deposit had been spent on materials for the R Street Property and that Plaintiff would need to pay an entirely new deposit for the work on the U Street Property.

22.     Defendants never performed any work on the R Street Property.  Purll alleges that he installed two "heavy ups" in the R Street Property.  A "heavy up" increases a home's electrical service capacity and is often required in older homes whose electrical systems cannot safely provide enough power to handle modern electronic needs.

23.     Purll never actually installed any heavy-ups in the R Street Property and has offered only a forged invoice in a blatant attempt to mislead Plaintiff and Serrano into believing that this work was performed.

24.     Purll and District Builders have never produced any legitimate receipts, invoices, order forms, or any other documents to show that materials were actually purchased in preparation for work on the R Street Property.  Even if Purll and District Builders could produce legitimate documentation to demonstrate they made purchases in preparation for work on the R Street Property, such purchases would not be legitimate expenses because Plaintiff never authorized such purchases and, in fact, rescinded the Contract.

25.     Even if Defendants had performed work on the R Street Property, Plaintiff would have been unable to authorize such work because he never owned the R Street Property.  Any such work would have constituted a trespass onto property by Purll.  Furthermore, the work Defendants claim to have performed was performed only *after* Plaintiff rescinded the Contract.

## CAUSES OF ACTION

### COUNT I
**Conversion**

26.     Plaintiff repeats and re-alleges each and every allegation contained in this Complaint with the same force and effect as if set forth herein.

27.     Purll claimed that he spent about $28,000 on materials for the R Street Property.

28.     In reliance on Purll's representation that he purchased materials and his further assurances that the materials could be used on the renovation to the U Street Property, Plaintiff authorized Purll and District Builders to withdraw approximately $28,000 from Plaintiff's qualified intermediary account.

29.     Purll and District Builders withdrew $47,463.93 – the entire amount of the deposit agreed to with respect to the R Street Property – notwithstanding that Plaintiff had already rescinded the Contract.

30.     Because the Contract was rescinded and Purll had not performed any work or purchased any materials for the R Street Property, Purll was not entitled to any payment from Plaintiff.

31.     The account from which Purll and District Builders withdrew the money belonged to Plaintiff, and Plaintiff had the right to control that account.

32.     Purll and District Builders intentionally and substantially interfered with Plaintiff's property interests in the account from which the money was withdrawn in a manner that amounted to depriving Plaintiff of property.

33.     Plaintiff did not authorize Purll or District Builders to withdraw any funds from the qualified intermediary account in excess of the approximately $28,000.00 that was demanded.

34.     Defendants did not perform any work on the R Street Property.

35.     At the time of the withdrawal, Plaintiff had already rescinded the Contract.

36.     Old Republic released the money to Purll because it was not aware that the Contract had been rescinded.

37.     Purll and District Builders have refused to return sums wrongfully converted from Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants District Builders and Purll, jointly and severally, in the amount of the Forty-Seven Thousand Four Hundred Sixty-Three Dollars and Ninety-Three Cents ($47,463.93), or some other amount as proven at trial, the costs of this litigation, pre- and post-judgment interest, and reasonable attorney's fees.

## COUNT II
### Fraud/Intentional Misrepresentation

38.     Plaintiff repeats and re-alleges each and every allegation contained in this Complaint with the same force and effect as if set forth herein.

39.     On March 30, 2017, Purll stated to Plaintiff – falsely and with  the intent to deceive – that Serrano, had authorized payment to Purll and District Builders from the qualified intermediary.  Serrano never gave any such authorization.

40.     Purll claims that he spent the money Plaintiff paid him on materials for the R Street Property; however, Purll has never provided a single legitimate receipt or invoice to show that any purchases were made or any work performed on the R Street Property.  Indeed, as Plaintiff never closed on the R Street Property, no work could ever have been legally performed pursuant to the Contract.

41.     In justifiable reliance on Defendants' false representation, Plaintiff authorized Defendants to withdraw approximately $28,000.00 from the qualified intermediary account.

42.     Plaintiff's reliance on Defendant's false representation was reasonable.

43.     Plaintiff has incurred damages, including emotional distress damages and mental anguish, which are the natural and proximate result of Defendants' conduct.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in the amount of the Forty-Seven Thousand Four Hundred Sixty-Three Dollars and Ninety-Three Cents ($47,463.93) fraudulently taken from him, Two-Hundred Fifty Thousand Dollars ($250,000.00) for emotional distress and mental anguish, or some other amount as proven at trial, plus punitive damages in the amount of Two-Hundred Fifty Thousand Dollars ($250,000.00), the costs of this litigation, and reasonable attorney's fees.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted,

_____

Philip B. Zipin, Bar No. 367362
Anthony G. Bizien, Bar No. MD 0051
Zipin, Amster & Greenberg, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910
Phone: 301-587-9373
Fax: 240-839-9142
pzipin@azagfirm.com
abizien@zagfirm.com

*Counsel for Plaintiff*