UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOSEPH C. REISINGER,

    Plaintiff,

    v.

DISTRICT BUILDERS OF SOUTHERN
MARYLAND, LLC, *et al.,*

    Defendants.

Civil Action No. 19-1358 (JEB)

**MEMORANDUM OPINION**

On May 10, 2019, Plaintiff Joseph C. Reisinger filed a Complaint against Defendants District Builders of Southern Maryland, LLC and Samuel B. Purll, Jr. for improperly taking money on a canceled construction project. When Defendants failed to appear, the Clerk of the Court entered default, and Plaintiff now moves for a default judgment of $164,927.52. The Court will grant Plaintiff's Motion in part and enter judgment in the amount of $47,463.97.

**I.    Background**

Reisinger invests in real property to take advantage of Internal Revenue Code § 1031 exchanges. See ECF No. 12 (Pl. Mot. Default J.), Exh. 2 (Aff. of Joseph C. Reisinger), ¶¶ 3–4. This section permits individuals to defer paying taxes on the realized gain from the sale of real property held for investment purposes, as long as they timely reinvest the proceeds of the sale into a similar property. Id., ¶ 4; 26 U.S.C. § 1031. Plaintiff's daughter, Lauren Serrano, lives in the District of Columbia and manages the properties. Id., ¶ 6. At the time in question, Serrano also had power of attorney to act on her father's behalf for matters related to the § 1031 exchanges. Id., ¶ 7.

In March of 2017, Reisinger entered into negotiations to buy real property located at 1662 R Street in Southeast Washington, D.C., which he planned to use for investment through a § 1031 exchange. Id., ¶ 9. Plaintiff then entered into a contract with Defendant District Builders. Id., ¶ 10. The contract was prepared by the owner of District Builders, Samuel Purll, and was executed on March 17. Id. It stated that District Builders would renovate the R Street Property; in exchange, Plaintiff would pay a deposit of $47,463.93 and then a total price of $189,855.70 once the renovations were completed. See Pl. Mot. Default J. at 3. The contract also contained a provision that stated, "Customer has seventy-two hours (72) to rescind this contract from signing." Pl. Mot. Default J., Exh. 4 (Contract), ¶ 4.7.

Shortly after executing the contract, Plaintiff discovered that he would be unable to purchase the R Street Property, and he subsequently notified Purll within the 72-hour window that the contract would be rescinded. See Reisinger Aff., ¶ 12. Although Plaintiff had not paid the deposit to District Builders, Purll had already purchased the materials needed to conduct the renovations on the property. See Pl. Mot. Default J. at 4. Despite rescinding the contract for R Street, Reisinger still wanted to hire Purll and District Builders to renovate another property located at 1300 U Street, S.E. Id. Purll assured Serrano that the same materials purchased to renovate R Street could be used at the U Street property. Id.

On March 30, Purll called Serrano and demanded that she pay $28,000 for the materials purchased for the renovations of R Street. See Pl. Mot. Default J., Exh. 3 (Aff. of Lauren Serrano), ¶ 7. As Serrano was in labor during their call, she advised Purll to contact her father to discuss the payment. Id. Purll immediately called Reisinger and demanded the $28,000 payment, which he claimed that Serrano had authorized. See Reisinger Aff., ¶ 17. Plaintiff then permitted Purll to withdraw that sum from his "qualified intermediary" account held by Old

2

Republic Exchange. Id. As prescribed by the IRC and Treasury regulations, the proceeds of such renovations must be held by a "qualified intermediary," which is only authorized to make payments on the taxpayer's behalf in connection with a property to be acquired as part of the exchange. Id., ¶¶ 18–20. Old Republic, without knowledge that the contract between Plaintiff and District Builders had been rescinded, made the funds available to Purll. Id., ¶ 21. Purll, however, withdrew the full $47,463.97, rather than the $28,000 he had discussed with Reisinger. Id., ¶ 22.

When Plaintiff realized that this had occurred, he demanded that Purll and District Builders return the money. They refused. See Pl. Mot. Default J. at 5. Purll later responded that the money had been spent on materials for R Street, and that Reisinger would need to pay an additional deposit for the work to be done on U Street. Id. Defendants, however, never performed work on R Street, nor did they submit any receipts, invoices, or order forms showing that materials were purchased for those renovations. See Pl. Mot. Default J., Exh. 4 (Aff. of Terry L. Satterfield), ¶¶ 3–4. In any event, Reisinger had not authorized any work given that he never purchased the property. See Pl. Mot. Default J. at 5-6

On May 10, 2019, Reisinger filed a Complaint in this Court against Defendants alleging conversion and fraud. See ECF No. 1. He sought economic, non-economic, and punitive damages. Id., ¶¶ 26-43. Plaintiff achieved service on both Defendants on September 7, 2019. See ECF No. 7 (Service Affidavit). Twenty-one days passed, and Defendants failed to plead or otherwise defend, as required by the Federal Rules of Civil Procedure. See Fed. R. Civ. Proc. 12(a)(1)(A). On October 8, Plaintiff sought default against Defendants, which the Clerk entered on October 9. Reisinger next moved for default judgment. See Pl. Mot. Default J. at 1. After the Court set a hearing regarding the extent of the non-economic damages sought, Plaintiff filed

a Notice, see ECF No. 15, withdrawing such request. The Court thus canceled the hearing and now issues its Opinion.

**II. Legal Standard**

Obtaining a "[d]efault judgment is a two-step procedure." Ventura v. L.A. Howard Constr. Co., 134 F. Supp. 3d 99, 102 (D.D.C. 2015) (citing Lanny J. Davis & Assocs., LLC v. Republic of Equatorial Guinea, 962 F. Supp. 2d 152, 161 (D.D.C. 2013)). A plaintiff must first request that the Clerk of the Court enter default against a party who has "failed to plead or otherwise defend" an action. Id. at 102-03 (quoting Fed. R. Civ. P. 55(a)). When the Clerk enters default, it establishes the defaulting party's liability for the well-pleaded allegations in the complaint. Id. at 103. The plaintiff must then move the court for a default judgment. See Fed. R. Civ. P. 55(b).

Determining if a default judgment is appropriate is "committed to the sound discretion of the trial court." Jackson v. Beech, 636 F.2d 831, 835 (D.C. Cir. 1980). When a defendant is unresponsive, and his default is clearly willful, as shown by his failure to respond to the summons and complaint, the entry of default, or the motion for default judgment, then default judgment may be entered. Hanley-Wood LLC v. Hanley Wood LLC, 783 F. Supp. 2d 147, 150 (D.D.C. 2011). A reviewing district court, however, may still deny an application for default judgment if the allegations of the complaint are legally insufficient to articulate a valid claim. Saint-Jean v. D.C. Pub. Sch. Div. of Transp., 815 F. Supp. 2d 1, 4 (D.D.C. 2011).

To guarantee that there is an adequate basis for damages, a plaintiff "must prove his entitlement to the relief requested using detailed affidavits or documentary evidence on which the court may rely." Bricklayers & Trowel Trades Int'l Pension Fund v. Miami Valley Masonry,

4

Inc., 288 F. Supp. 3d 257, 259 (D.D.C. 2018) (quoting Ventura, 134 F. Supp. 3d at 103). A district court may conduct hearings to determine the amount of damages to award. Id.

### III. Analysis

Reisinger asserts that Defendants committed the intentional torts of conversion and intentional misrepresentation. See Pl. Mot. Default J. at 7. As relief, he first requests that the Court award him $47,463.97 in economic damages for the total amount Defendants withdrew from his Old Republic account. Id. at 9. (As the number of cents changes in different pleadings, the Court will apply the figure used most often — *viz.*, $47,463.97.) He also asserts that because Defendants committed fraud, he is entitled to $82,463.79 in punitive damages. Id. at 10–11. The Court will look at each category separately.

#### A. Economic Damages

As a threshold matter, Plaintiff maintains that Defendants' actions satisfy the elements of conversion and fraudulent misrepresentation. See Pl. Mot. Default J. at 9. This is because they improperly took $47,463.97 of his money. Id. In the District of Columbia, conversion is an unlawful exercise of ownership, dominion, and control over the property of another and the denial or repudiation of his right to such property. Cong. Hunger Ctr. v. Gurey, 308 F. Supp. 3d 223, 228–29 (D.D.C. 2018) (quoting Dukore v. Dist. of Columbia, 970 F. Supp. 2d 23, 34 (D.D.C. 2013)). Similarly, the elements of fraudulent misrepresentation are "(1) a false representation or willful omission of a material fact; (2) knowledge of the falsity; (3) an intention to induce reliance; and (4) action taken in reliance on the representation." Howard v. Riggs Nat'l Bank, 432 A.2d 701, 706 (D.C. 1981).

As stated in Reisinger's affidavit, on March 30, 2017, Purll called him and not only improperly demanded $28,000 but also intentionally mispresented his previous conversation

5

with Serrano. See Reisinger Aff., ¶ 17. Defendants then withdrew the $28,000 they had fraudulently induced Plaintiff into agreeing to, as well as an additional $19,463.97, from his Old Republic account. Id., ¶ 22. This Court, consequently, will award Plaintiff $47,463.97 in economic damages.

    B. Punitive Damages

Plaintiff also believes that he is entitled to recover punitive damages for Defendants' fraudulent misrepresentation. He asserts that "[u]nder D.C. law, punitive damages can be awarded if the defendant's actions are accompanied by 'fraud, ill will, reckless, wantonness, oppressiveness, willful disregard of the plaintiff's rights, or other circumstances tending to aggravate the injury.'" Pl. Mot. Default J. at 10 (citing Remeikis v. Boss & Phelps, Inc., 419 A.2d 986, 992 (D.C. 1980)). The standard that Plaintiff cites here, however, is not complete.

In the District of Columbia, to recover punitive damages for intentional misrepresentation, there is a more stringent standard, and a plaintiff is required to show aggravating circumstances beyond mere fraud. See Essroc Cement Corp. v. CTI/D.C., Inc., 740 F. Supp. 2d 131, 147 (D.D.C. 2010) (citing BWX Elecs. Inc. v. Control Data Corp., 929 F.2d 707, 713 (D.C. Cir. 1991)). Fraud by itself is insufficient to yield an award of punitive damages. Id.; see Dist. Cablevision L.P. v. Bassin, 828 A.2d 714, 725–26 (D.C. 2003) ("[I]n the absence of 'gross fraud' or comparable wrongdoing, proof of even intentional misrepresentation may not suffice to justify punitive damages.").

In this case, Reisinger has shown that Defendants intentionally misrepresented their previous phone conversation with Serrano and then fraudulently took out $47,463.97 from his Old Republic account. See Reisinger Aff., ¶ 22. What Plaintiff has failed to do, however, is to show that Defendants' actions rise to the level of "gross fraud" or comparable wrongdoing to

6

sufficiently justify awarding punitive damages. The Court will thus deny this category of damages.

## IV. Conclusion

The Court accordingly, will grant Plaintiff's Motion for Default Judgment in part and award him $47,463.97. A contemporaneous Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: March 12, 2020